The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GABRIEL PETERSON-SILER,<br><br>    Defendant. | NO. 2:15-cr-00118-RAJ<br><br>ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on Defendant Gabriel Peterson-Siler's motion for compassionate release. Dkt. 63. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons explained herein.

## I. BACKGROUND

This matter arises out of an investigation by the Seattle Police Department, working with the Federal Bureau of Investigations. Mr. Peterson-Siler came to the attention of law enforcement in 2013, after he created user accounts on three online bulletin boards that hosted forums for posting images and videos of child pornography. Mr. Peterson Siler viewed and downloaded child pornography from the bulletin boards. He was active on the bulletin boards and participated in online conversations which

included discussions of the rape and kidnapping of children, and he shared information on the manufacture and use of homemade chloroform on children.

In 2008, prior to the conduct outlined above, Mr. Peterson-Siler was convicted in state court of one count of Possession of Depictions of Minors Engaged in Sexually Explicit Conduct and was sentenced to 14 months' imprisonment. In that case he was arrested after contacting adults on a Craigslist forum, seeking sex with their children. Upon execution of a search warrant, Mr. Peterson-Siler's computers were found to have over 10,000 images and videos of child pornography. Upon Mr. Peterson-Siler's release from prison he participated in sexual deviancy treatment. While participating in this sexual deviancy treatment, he engaged in the offense for which he is currently serving his federal sentence.

On April 15, 2015, Mr. Peterson-Siler was indicted by a federal grand jury sitting in the Western District of Washington of one count of Possession of Child Pornography. Dkt. 12. On February 1, 2016, Mr. Peterson-Siler pled guilty to the count of Possession of Child Pornography as charged in the Indictment. Dkt. 43.

Because of his prior conviction for possessing child pornography, Mr. Peterson-Siler faced a mandatory minimum period of 10 years' imprisonment. On May 5, 2016, this Court sentenced Mr. Peterson-Siler to the mandatory minimum 10-year term of imprisonment, to be followed by a lifetime of supervised release. Dkt. 56.

Mr. Peterson-Siler is currently housed at Federal Corrections Institution Terminal Island, with a projected release date of October 13, 2023.

On July 24, 2020, Mr. Peterson-Siler filed the instant motion for compassionate release, requesting the Court reduce his custodial sentence to time served and immediately release him to begin his lifetime term of supervised release. Dkt. 63.

Mr. Peterson-Siler argues that he presents extraordinary and compelling reasons for relief due to his underlying health conditions that heighten his risk for developing complications from a coronavirus-19 (COVID-19) infection, specifically an untreated kidney stone, obesity, and chronic bronchitis. In addition, although his Bureau

of Prisons (BOP) records reflect that Mr. Peterson-Siler already tested positive for COVID-19 on April 27, 2020. (Dkt. 64), the records reflect he was asymptomatic, which Mr. Peterson-Siler asserts indicates his positive test was in fact a false positive. Accordingly, Mr. Peterson-Siler reasons the Court should view him as if he has never been infected with the virus. Dkt. 63.

Finally, Mr. Peterson-Siler contends the conditions at FCI Terminal Island render him vulnerable to infection by the virus, either through a newly booked inmate or by an infected staff member entering the facility. Dkt. 63.

Mr. Peterson-Siler asserts he would not pose a danger to the community if released under the strict conditions of his supervised release. Dkt. 63.

The government responds that because Mr. Peterson-Siler has not presented extraordinary and compelling reasons for a reduction in sentence, and because he continues to be a danger to others and to the community, his motion for compassionate release should be denied. The government points out that, except for his kidney stone, Mr. Peterson-Siler is in good health and has none of the risk factors considered by the Centers for Disease Control and Prevention (CDC) as placing him at risk of severe illness or death were he to re-contract COVID-19. Dkt. 68.

In addition to maintaining that Mr. Peterson-Siler's concerns regarding COVID-19 do not present an extraordinary and compelling reason to release him, the government emphasizes the severity of Mr. Peterson-Siler's crime, particularly since it was committed while under supervision and while participating in sexual deviancy treatment. Dkt. 68.

Finally, the government outlines the steps being taken by the BOP at FCI Terminal Island and other BOP facilities to control and contain the spread of the virus. Dkt. 68.

## II. DISCUSSION

**A.     Legal Standard for Compassionate Release**

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if

"extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13. The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1. The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take. USSC § 1B1.13 cmt. n.4.

Mr. Peterson-Siler's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release." As relevant to Mr. Peterson-Siler's motion, the statute now provides:

> (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original

> term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

### B. Exhaustion of Administrative Remedies

It is undisputed that Mr. Peterson-Siler has met the exhaustion requirement. On May 14, 2020, Mr. Peterson-Siler submitted a BP-9 "request for administrative remedy" form, petitioning the warden for compassionate release. Dkt. 63, Ex. C. On June 6, 2020, John LeMaster, senior counsel at FCI Terminal Island, denied Mr. Peterson-Siler's request for compassionate release. Dkt. 63, Ex. D.

The government agrees the statutory prerequisite has been met and that Mr. Peterson-Siler's request to the Court for compassionate release is timely and properly before the Court. Dkt. 68.

### C. Extraordinary and Compelling Circumstances

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Peterson-Siler's term of imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994. That statute provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

Consistent with this statute, the applicable policy statement can be found at Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and
>
> (3) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (4) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence. Specifically, Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the

environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.n.1.

Mr. Peterson-Siler argues that he has presented extraordinary and compelling reasons for the Court to grant him the relief he requests. Mr. Peterson-Siler indicates that his BOP medical records contain evidence he suffers from several health issues, including an untreated kidney stone, obesity, depression, and acute bronchitis. Mr. Peterson-Siler focuses the bulk of his motion on his untreated kidney stone. Dkt. 63.

While conceding kidney stones are not a risk factor recognized by the CDC as contributing to a heightened risk of complications for those who contract COVID-19, the majority of Mr. Peterson-Siler's motion centers on the argument that untreated kidney stones can lead to kidney damage and kidney disease, which are risk factors recognized by the CDC. Dkt. 63.

Although his kidney stone was discovered by BOP staff in June of 2019, at that time Mr. Peterson-Siler reported that he had been in pain from the kidney stone for the previous two years. Dkt. 64, Ex. A, at 117-119. In December of 2019, medical staff noted he needed surgery. *Id.* at 107-108. To date, Mr. Peterson-Siler has not received surgery for the kidney stone. He argues that after three years now without treatment, there is a possibility that his kidneys have been damaged and that a severe COVID-19 infection could be catastrophic for him and could lead to permanent kidney damage and even kidney failure. Dkt. 63.

The BOP medical records submitted in support of his motion indicate that Mr. Peterson-Siler tested positive for COVID-19 on April 27, 2020. Dkt. 64, Ex A, at 92. The records reflect that he was asymptomatic. *Id.* at 65. Mr. Peterson-Siler contends that his positive result for COVID-19 was likely a false positive. He argues that since he suffers from chronic pain from his kidney stone and has a history of health issues that include obesity and acute bronchitis, he could become infected with COVID-19 without experiencing any symptoms. Dkt. 63.

Accordingly, Mr. Peterson-Siler reasons that the Court should view him as if he had never been infected with the virus, and that the Court should accept his claim that he remains at risk of becoming infected with COVID-19 while incarcerated, and that he is at great risk of suffering from COVID-19 complications should he become infected. Dkt. 63.

Finally, Mr. Peterson-Siler argues that he is incarcerated in a crowded prison facility that recently suffered one of the nation's worst outbreaks of COVID-19 within prison walls, and that the BOP administration is unable to prevent further outbreaks given the fact newly booked inmates and staff members enter the prison on a daily basis, potentially bringing the virus into the facility. Dkt. 63.

In response, the government argues Mr. Peterson-Siler has not met the standard for a reduction in his sentence, and that he has failed to meet his burden of showing extraordinary and compelling reasons for compassionate release to be granted. The government indicates that Mr. Peterson-Siler is a 34-year-old man with only one medical condition, a kidney stone, for which he has had ongoing care. The government points to the medical records which indicate he was referred for a lithotripsy procedure, which involves sending ultrasonic energy or shock waves to the kidney stone, which break a large stone into smaller stones which will then pass through the urinary tract. Dkt. 64, Ex. A at p. 24.

The government contends that although Mr. Peterson-Siler claims his kidney stone may at some point lead to chronic kidney disease, there is no actual evidence this will occur in the near future or ever, and that any claim to the contrary is mere speculation. The government argues that the evidence is clear that Mr. Peterson-Siler does not have any risk factors identified by the CDC as leading to severe illness or complications from COVID-19. Dkt. 68.

The government indicates that Mr. Peterson-Siler has already tested positive for COVID-19, was asymptomatic throughout, similar to the vast majority of individuals detained at FCI Terminal Island, and that he has since recovered. Dkt. 68.

ORDER - 8

1  The government contends Mr. Peterson-Siler's claim that his positive COVID-19
2 test was likely a false positive is baseless and speculative given the CDC currently
3 estimates that 40% of those infected with COVID-19 are asymptomatic.  The government
4 indicates Mr. Peterson-Siler's generalized fear of contracting (or re-contracting) the virus
5 while incarcerated at FCI Terminal Island is insufficient to meet the criteria for a
6 reduction in sentence set forth in the Sentencing Commission's policy statement on
7 compassionate release.  Dkt. 68.

8  Responding to Mr. Peterson-Siler's contention that the BOP is unable to
9 sufficiently manage the pandemic to keep him and other inmates safe, the government
10 sets forth in detail the steps the BOP is taking to combat and control the spread of
11 COVID-19 in its facilities, including at FCI Terminal Island.  The government argues
12 that Mr. Peterson-Siler's speculative fear of contracting the virus is insufficient to justify
13 compassionate release, as the Bureau of Prisons has taken and will continue to take the
14 necessary steps to safely house inmates during the pandemic.  Dkt. 68.

15  In reply, Mr. Peterson-Siler refutes the government's contention that he is in good
16 health, pointing to a hospital visit in April 2019 for acute abdominal pain, and the fact the
17 BOP has still not provided the needed surgery for his kidney stone.  Dkt. 74.

18  Mr. Peterson-Siler argues that even if his COVID-19 test was not a false positive,
19 the fact he was asymptomatic suggests that his infection was so mild that his immune
20 system didn't respond, and that there is no scientific evidence at this time showing that he
21 could not re-contract the virus.  Dkt. 74.  He indicates that the statistic by the CDC that
22 40% of positive cases are asymptomatic is accompanied with the comment that the
23 percentage of cases that are asymptomatic remains uncertain.  Dkt. 74.

24  While some courts have held, as argued by the Government, that the Sentencing
25 Commission's policy statement on compassionate release remains controlling in the wake
26 of the First Step Act, this Court agrees with the position taken by numerous courts that
27 the "old policy statement provides helpful guidance, [but]…does not constrain [a court's]
28 independent assessment of whether 'extraordinary and compelling reasons' warrant a

1  sentence reduction under § 3852(c)(1)(A)." *United States v. Cosgrove, Id.; United States
2  v. Rodriguez*, 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,*
3  2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043
4  (RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No.
5  2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

6  Even with this expanded interpretation of the Sentencing Commission's policy
7  statement, Mr. Peterson-Siler does not meet the requirements for an extraordinary and
8  compassionate release from prison.

9  This Court relies upon medical records, not supposition, and supposition about his
10 COVID-19 diagnosis and asymptomatic condition are primarily what he relies upon to
11 support his claim. At best, he has expressed general concerns about possible exposure or
12 re-exposure to the virus. He has not identified any risk factors identified by the CDC as
13 leading to severe illness.

14 The medical records represent that he tested positive for COVID-19 on April 27,
15 2020, but was observed to be asymptomatic. His only counter to the testing is that the
16 test must have been a false positive because he had no symptoms. His arguments are
17 replete with suspicion but no facts, *e.g.*, if he were truly infected with COVID-19 *one*
18 *would expect to see several pages of medical records; likely see reports from medical*
19 *records; and in the absence of medical records following his quarantine the conclusion*
20 *must be he was never infected in the first place.* Dkt. 63, pgs. 6-7.

21 If the Court is confronted with weighing Mr. Peterson-Siler's speculation and
22 conjecture about his asymptomatic diagnosis opposed to the medical records verifying
23 actual testing, the Court's conclusion yields to the available scientific testing. This is
24 particularly so since Mr. Peterson-Siler did not exhibit any other of the known outward
25 symptoms of the virus.

26 The medical records do reflect that Mr. Peterson-Siler suffers from a chronic
27 condition associated with kidney stones. The BOP records suggest that the BOP had
28 recommended surgery to address these concerns in December, 2019, yet nothing to date

has been done.  If surgery is indeed at the crisis level represented by Mr. Peterson-Siler, the Court is perplexed why arrangements have not been undertaken.  It is clear to this Court, however, that the remedy for Mr. Peterson-Siler's condition is surgery and return to prison, but not relief from the previously imposed sentence.  As noted by the government, chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.  *United States v. Ayon-Nunez*, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 20200; *United States v. Mangarella,* 2020 WL 1291835 at *2-3 (W.D.N.C. Mar. 16, 2020.

For these reasons the Court concludes that Mr. Peterson-Siler has not met his burden and his request for compassionate release is denied.

### D.  Safety of Others

The Court next turns to whether Mr. Peterson-Siler presents a danger to the safety of any other person or to the community.  *See* U.S.S.G. §1B1.13(2).  In making this determination, the Court looks to the nature and circumstances of the underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community.  18 U.S.C. §3142(g).

Mr. Peterson-Siler's criminal conduct was serious and supported by substantial evidence as contained in the Statement of Facts in the Plea Agreement, which sets forth in detail the acts Mr. Peterson-Siler agreed he committed.  Dkt. 43.  However, Mr. Peterson-Siler argues he is neither a danger to the community nor a risk to the safety of others if released under the strict conditions of his lifetime term supervised release.  He indicates that because he will be prohibited from accessing the internet without prior approval from his probation officer, such a prohibition will dramatically reduce his risk of recidivism.  He indicates the condition requiring a sexual deviancy evaluation and follow-on treatment will further mitigate his risk of reoffending.  Dkt. 63.

The argument ignores the fact that following his 2008 conviction, a term of imprisonment, supervision, and sexual deviancy treatment, he returned to the exact same criminal behavior. The defense suggests this crime was merely that of viewing but no physical contact with any children. This ignores the facts of the underlying offense where Mr. Peterson-Siler was online discussing the rape and kidnapping of children and how to use homemade chloroform on children. Only five years separated the 2008 offense with the current matter when he was arrested on February 3, 2015. He is now just a few months past five years since that arrest.

The Court finds Mr. Peterson-Siler would present a grave danger to others and to the community if released early when considering the serious nature of his crime as well as what appears to be his inability to control his desire to view and pursue satisfaction of his sexually deviant desires.

The outbreak of the COVID-19 pandemic does not reduce Mr. Peterson-Siler's danger to others and his reliance on being closely monitored by Probation on supervised release is misplaced, particularly when the usual means by which probation officers are able to ensure effective monitoring are extremely restricted at this time. Mr. Peterson-Siler committed his crimes using digital devices he could easily obtain once released, such as a cell phone. He continues to pose a danger to the safety of others and the community.

Mr. Peterson-Siler's engagement in child pornography in the past and his renewed passion to satisfy those urges with the current offense leads this Court to the clear conclusion that there is a grave concern that he may re-offend. Early release under these circumstances is not appropriate in the interest of safety to the community.

**E. Other 18 U.S.C. § 3553(a) Factors**

In determining whether to grant Mr. Peterson-Siler's compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court also considered the relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a). These factors include the need for the

sentence imposed, the kinds of sentences available, promoting respect for the law, providing just punishment for the offense, avoiding unwarranted sentencing disparities, and providing medical care in the most efficient manner.  18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C. § 3582(c)(1)(A).

Mr. Peterson-Siler asserts the § 3553(a) factors support compassionate release as he has completed 70% of his sentence and is now serving his sentence under conditions that the Court could not foresee at the time of the original sentencing.  Mr. Peterson-Siler asks the Court to rebalance his risk of suffering from COVID-19 related complications with the need for further incarceration, arguing that compassionate release is appropriate under these circumstances.  While conceding his crime was serious, Mr. Peterson Siler argues that reducing his sentence at this time to time served would be consistent with the goals of § 3553(a).  Dkt. 63.

The government counters that the factors set out in § 3553(a) have not changed since Mr. Peterson-Siler was originally sentenced, and that no new circumstances have arisen which merit a reduction in the Court's original sentence.  Dkt. 68.

At the time Mr. Peterson-Siler was sentenced, the Court could not have factored in the concerns of the virus or the conditions of where he would be housed.  At sentencing, the Court did, however, consider his history and characteristics and found that the custodial sentence was necessary and appropriate to promote respect for the law, provide just punishment, and to avoid unwarranted sentencing disparities.  None of the arguments Mr. Peterson-Siler now advances in support of his motion support a rebalancing of his previously imposed sentence to time served or early release.  Even if this Court had found extraordinary and compelling reasons to justify his release, the danger to the community and the other §3553(a) factors militate against it.

### F.  Consistency with Policy Statement

Last, the Court must determine whether Mr. Peterson-Siler's compassionate release would be consistent with the relevant policy statement.  *See* U.S.S.G. §

1B1.13(3). The policy requires the Court to make certain findings before granting an inmate's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). This directive has been accomplished with the detail of this Order.

### III. CONCLUSION

For the foregoing reasons, Defendant Gabriel Peterson-Siler's motion for compassionate release is **DENIED**.

DATED this 31st day of August, 2020.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 14